IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

REXAM HEALTHCARE PACKAGING, INC, et al.,

                      Plaintiff,            Case No. 3:09 CV 1584

    -vs-

                                                    MEMORANDUM OPINION

OSIRIS MEDICAL, INC., et al.,

                      Defendant.

KATZ, J.

This matter is before the Court on the motion (Doc. 14) of the defendants, Osiris Medical, Inc., Raul Garcia, and Gladys Acuna, for dismissal pursuant to Fed. R. Civ. P. 12(b)(2) on the ground that this Court lacks personal jurisdiction over them. The motion will be denied.

**I. Factual Background**

Where the defendant files a properly supported motion to dismiss, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir.1991). The question at this stage of the proceedings, however, is merely whether the plaintiff has made a *prima facie* showing that this Court has personal jurisdiction over the defendants. Because the Court has not held an evidentiary hearing on the motion now at issue, "the facts asserted by the plaintiff must be taken as true." *Advanced Polymer Sciences, Inc. v. Phillips Indus. Services*, 34 F.Supp.2d 597 (N.D.Ohio,1999).

Those facts, as stated in several affidavits filed with the Court, are as follows: Garcia was hired in 1996 by the plaintiff, Rexam HealthCare Packaging, Inc. (formerly known as Owens-Illinois Prescription Products, Inc.), a company based in Perrysburg, Ohio, as General Manager of Rexam's manufacturing plant in Ciudad Juárez, Mexico. All financial aspects of Garcia's

employment, including his paychecks, were processed through Rexam HealthCare in Ohio; Garcia reported to direct supervisors in Ohio; and Garcia obtained reimbursement for all of his plant's expenses through Ohio. Garcia abused his employment relationship, however, by using Rexam's personnel and resources to secretly manufacture and sell falsely-labeled products for his own personal gain. He did so under the banner of Osiris Medical, Inc., a company formed by Garcia in 2006 with himself as the president and sole director. Gladys Acuna, Garcia's wife, was a party to the conspiracy, as she actively sought to open distribution channels for Osiris products throughout South America and the United States. Rexam terminated Garcia upon learning of his fraudulent activities in 2008.

On this basis, Rexam now brings claims for conversion, fraud, breach of contract, breach of fiduciary duty, unjust enrichment, and violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq*.

## II. Discussion

In order for this Court to assert personal jurisdiction over a defendant, "the defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *Reynolds v. International Amateur Athletic Federation*, 23 F.3d 1110, 1115 (6th Cir. 1994). The Court will first consider whether the requirements for personal jurisdiction are met in the present case as to Garcia, and then consider whether personal jurisdiction may be had over the remaining defendants under RICO.

### A. *Ohio's Long-Arm Statute*

Ohio's long-arm statute permits jurisdiction over a defendant where the cause of action arises from a defendant's "[t]ransacting any business in [Ohio]". Ohio Rev. Code §

2307.382(A)(1). As interpreted by the Ohio courts, "the broad wording of the statute permits jurisdiction over non-resident defendants who are transacting any business in Ohio." *Kroger Co. v. Malease Foods Corp.*, 437 F.3d 506, 511 (6th Cir. 2006). The phrase "transact" means "to *prosecute negotiations*; to carry on business; *to have dealings*." *Id*. (quoting *Kentucky Oaks Mall v. Mitchell's Formal Wear*, 53 Ohio St.3d 73, 75 (1990) (emphasis in original). Under Ohio law, "personal jurisdiction does not require physical presence in the forum state." *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 236 (1994)

As stated above, the claims in this suit arise out of a long-term employment relationship between an Ohio company and its plant manager in Mexico. It was Garcia's abuse of this relationship that gives rise to the claims in this suit. The contacts between Garcia and his Ohio supervisors were systematic and continuous, involving weekly expense claims, monthly performance reports, routine telephone and email communication, and the transfer of money. These sorts of day-to-day business dealings with an Ohio company fall squarely within the meaning of "transacting any business" as that phrase has been interpreted by the Ohio courts, and therefore Garcia falls within the reach of Ohio's long-arm statute.[1]

## *B. Due Process*

The constitutional concept of due process "requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend

---

[1] Garcia also falls within the reach of the long-arm statute because, by his fraudulent acts, he "[c]aus[ed] tortious injury by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state." Ohio Rev. Code § 2307.382(A)(6); see also *Highway Auto Sales, Inc. v. Auto-Konig of Scottsdale, Inc.*, 943 F.Supp. 825, 829 (N.D.Ohio 1996).

traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The Sixth Circuit has interpreted the "minimum contacts" test to require: 1) that the defendant "purposefully avails" himself of the privilege of acting in the forum state; 2) that the cause of action arise from the defendant's activities in the forum state; and 3) that the activities of the defendant be substantial enough in the forum state to make the exercise of jurisdiction reasonable. *Reynolds*, 23 F.3d at 1116. The Court finds that the exercise of personal jurisdiction over Garcia in this case meets all three requirements.

**1. "Purposeful Availment"**

A defendant satisfies the "purposeful availment" requirement when his contacts create a "substantial connection" with the forum state such that defendant "should reasonably anticipate being haled into court there." *CompuServe Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985), and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Supreme Court's analysis in *Rudzewicz* makes clear that personal jurisdiction over Garcia is appropriate in this case. *Rudzewicz* involved a suit for breach of a franchise agreement brought by a Florida plaintiff in a Florida court against an out-of-state defendant who "did not maintain offices in Florida and, for all that appear[ed] from the record, ha[d] never even visited there." *Rudzewicz*, 471 U.S. at 479. The Court nonetheless found that the defendant could be sued in Florida because he deliberately reached out beyond his home state to negotiate the purchase of a franchise and, in so doing, "entered into a carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with [the plaintiff] in Florida." *Id*. at 479-480.

4

So too in this case, Garcia purposefully entered into a long-term employment relationship with a company he knew to be based in Ohio, a relationship that contemplated close coordination with his Ohio supervisors in operating the Ciudad Juárez plant. Thus, Garcia should have reasonably anticipated being haled into court in Ohio.

## 2. "Arising From"

As to the "arising from" requirement, the Sixth Circuit has said that "[i]f a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contracts." *CompuServe*, 89 F.3d at 1267. Here, Garcia's contacts are intimately connected to the operative facts of the controversy, as the claims in this action arise directly from Garcia's abuse of the trust of his employer, Rexam, by misusing Rexam's personnel and facilities for his own personal gain.

## 3. Reasonableness

Determining whether the exercise of personal jurisdiction is "reasonable" involves a balancing of three factors: "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *City of Monroe Employees Ret. Sys. v. Bridgestone*, 399 F.3d 651, 666 (6th Cir.2005) (quoting *Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 113 (1987)). Where the first two criteria of the "minimum contacts" test are met, "only the unusual case will not meet this third criterion." *Theunissen*, 935 F.2d at 1461 (citations and quotation marks omitted).

The Court finds the balancing test satisfied in this case. The defendants here are two American citizens who reside in Texas, as well as a corporation incorporated in Delaware with its principal office in El Paso. All three defendants are actively involved in marketing medical

5

products to customers throughout the United States and South America. Additionally, Garcia frequently attended management meetings in Ohio as a Rexam employee. The defendants cannot now be heard to complain of the burden of travel simply because it is this Court, and not a potential customer, that demands their time. Although the defendants protest that Rexam is a "multi-billion dollar corporate behemoth" (Doc. 31 at 4), the relevant question is not merely which side has greater wealth. See *Rudzewicz*, 471 U.S. at 483 n. 25 ("Absent compelling considerations, a defendant who has purposefully derived commercial benefit from his affiliations in a forum may not defeat jurisdiction there simply because of his adversary's greater net wealth.") (internal citation omitted). Instead, question is whether the defendants' burden in defending this suit in Ohio would be "so substantial as to achieve *constitutional* magnitude," *id*. at 484 (emphasis in original), and there is simply nothing in the record that would support such a finding.

The Court also finds that Ohio's interest in this suit is greater than that of Texas, defendants' preferred venue. Ohio has a significant interest in ensuring that its citizens are not defrauded in their out-of-state investments. Moreover, the events giving rise to this suit did not occur in Texas, but rather in Mexico, where Garcia misappropriated the resources and personnel of the plant he managed, and Ohio, the location of the intended victim of Garcia's fraudulent acts. Texas's interest in this suit is therefore slight.[2] Weighing the relevant factors, the Court finds the exercise of jurisdiction over defendants in this case to be reasonable.

*C. RICO Supplemental Jurisdiction*

---

[2] For these reasons, as well as those stated in Parts II-A and II-B(1), the Court finds that venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), as a "a substantial part of the events or omissions giving rise to the claim occurred" in the Northern District of Ohio.

Having found personal jurisdiction over Garcia, the Court next considers whether it has jurisdiction over Osiris and Acuna.

The Federal Rules of Civil Procedure provide that valid service of process "is effective to establish personal jurisdiction over the person of a defendant when authorized by a statute of the United States." Fed.R.Civ.P. 4(k)(1)(D). "Therefore, when a federal statute provides for nationwide service of process, it becomes a statutory basis for personal jurisdiction." *Suarez Corp. v. McGraw*, 71 F.Supp.2d 769, 777 (N.D.Ohio 1999).

It is generally agreed that the RICO provides for nationwide service of process. See 18 U.S.C. § 1965. There is a long-standing circuit split as to which subpart of RICO, § 1965(b) or § 1965(d), provides for such service. See *In re National Century Financial Enterprises, Inc., Inv. Litigation*, 617 F.Supp.2d 700, 708-709 (S.D.Ohio 2009). Courts looking to § 1965(b) "have found RICO service of process appropriate when the court has personal jurisdiction over at least one of the defendants and when the 'ends of justice' require service over other, nonresident defendants." *Suarez Corp.*, 71 F.Supp.2d at 778. The courts relying on § 1965(d), by contrast, hold that RICO permits service of process on a defendant "in any judicial district in which the defendant is found." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir. 1997). Under either test, the exercise of personal jurisdiction must comport with requirements of the Fifth Amendment, which looks to whether the defendant has sufficient "minimum contacts" with the nation as a whole, rather than just the forum state. *Id*. at 946-947; *Rolls-Royce Corp. v. Heros, Inc.*, 576 F.Supp.2d 765, 783 (N.D.Tex.2008).

Because the Sixth Circuit has not taken a side on the matter, this Court will analyze whether personal jurisdiction may be asserted against Osiris and Acuna with respect to both §

1965(b) and § 1965(d). There is little doubt that the exercise of personal jurisdiction over Osiris and Acuna is authorized under the § 1965(d) interpretation. Acuna lives in Texas, Osiris operates out of Texas, and they have both have been served with process in this country.[3]

This Court finds that RICO service of process may also be asserted against Osiris and Acuna under the § 1965(b) approach. This Court has already found that this Court has personal jurisdiction over at least one defendant, Garcia, based on "minimum contacts" with this forum. The only remaining question under the § 1965(b) test is whether it has been shown that "the ends of justice require" that Osiris and Acuna be brought before this Court.

This question implicates yet another circuit split. The Ninth Circuit has read the phrase "the ends of justice" in § 1965(b) to mean that "the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986). The Ninth Circuit did not explain why it felt that § 1965(b) required this crabbed and inflexible interpretation, however, and better-reasoned opinions from other courts have reached a contrary conclusion.

In *Cory v. Aztec Steel Bldg.*, Inc., 468 F.3d 1226, 1232 (10th Cir. 2006), for example, the Tenth Circuit "disagree[d] with the Ninth Circuit" and "conclude[d] that the 'ends of justice' analysis is not controlled by the fact that all defendants may be amenable to suit in one forum." In

---

[3]

In *Republic of Panama*, the Eleventh Circuit suggested that, under the § 1965(d) approach, the Fifth Amendment might impose an additional limitation on a court's exercise of personal jurisdiction in "highly unusual cases" where the inconvenience to the defendant of litigating in the forum is serious enough to "rise to a level of constitutional concern." 119 F.3d at 942. For the reasons stated in Parts II-B-3 and II-C of this opinion, the Court finds that grave constitutional concerns would not be raised if Acuna and Osiris were required to litigate in the Northern District of Ohio.

8

so holding, the Tenth Circuit cited persuasive evidence that Congress modeled RICO § 1965(b) on antitrust laws that "prescribe[d] an 'ends of justice' analysis for allowing 'other parties' to be summoned before the court, 'whether they reside in the district in which the court is held or not.'" *Id*. at 1232 (quoting 15 U.S.C. §§ 5 (Sherman Act), 10 (Wilson Tariff Act), & 22 (Clayton Act)). The Tenth Circuit also noted that it would be inconsistent with RICO's purpose of "eradicat[ing] organized crime" to force a RICO plaintiff to litigate in an inconvenient judicial district "whenever organized criminals operate within the same locale and cause harm in a distant state." *Id*. at 1232; see also *Rolls-Royce Corp.*, 576 F.Supp.2d at 782 (N.D.Tex. 2008) ("The court agrees with the reasoning of *Cory* and declines to follow the Ninth Circuit's restrictive interpretation of § 1965(b)"); *American Trade Partners, L.P. v. A-1 Intern. Importing Enterprises, Ltd.*, 755 F.Supp. 1292, 1305 n.20 (E.D.Pa.1990) (declining to follow *Butcher's Union* because "[n]owhere in section 1965(b) does it say that there must not be some other appropriate forum.").

This Court too declines to follow the Ninth Circuit's arbitrary *Butcher's Union* rule. Instead, the applicable standard was correctly stated by the Tenth Circuit: "the 'ends of justice' is a flexible concept uniquely tailored to the facts of each case." *Cory*, 468 F.3d at 1232. Factors that courts have looked to in considering whether the "ends of justice" require RICO service of process include: "the desirability of having the whole action litigated in one court," *Farmers Bank v. Bell Mortgage Corp.*, 577 F.Supp. 34, 35 (D.Del.1978); accord *Suarez Corp.*, 71 F.Supp.2d at 778 (N.D.Ohio 1999) ("It would not serve the ends of justice to require separate trials in different fora against parties who work in the same department and who both have close involvement in the events underlying the plaintiff's case, including previous litigation between the parties."); the cost of the delay involved in transferring the case to another forum, see *Miller Brewing Co. v. Landau*,

9

616 F.Supp. 1285, 1290-1291 (D.Wis.1985) (presence of alternative forum where venue would be proper as to all defendants "should not be the sole consideration [under § 1965(b)], especially where transferring the case would result in extraordinary delay"); and the general balance of hardships between plaintiff and defendant, see *id.* at 1291 (noting that the defendants had already retained local counsel "and appear to be capable of defending this action in this district").

These considerations all point towards this Court retaining jurisdiction over all of the defendants in this action. If this Court were to find § 1965(b) jurisdiction improper, it would result only in the dismissal of Osiris and Acuna from this suit, for the plaintiff has already made a *prima face* showing of personal jurisdiction under traditional principles as to Garcia. This would potentially require the claims in this action to be simultaneously litigated in both Texas and this Court, to the great expense and inconvenience of both parties. Though it is true that, in that event, Rexam could seek dismissal of Garcia's claims in this Court, a transfer would also entail significant and costly delay. This case is already seven months old, and no discovery has yet been conducted (indeed, no answer has even been filed) as the parties have spent their time briefing the instant motion. A transfer would result in even more delay as the parties brought new local counsel up to speed.

By contrast, the burdens on Osiris and Acuna in having to defend this suit in Ohio are minimal. They already have competent Ohio counsel in place and appear quite capable of defending this action in the Northern District. Any burden imposed on Osiris by having to litigate in this forum is *de minimis*, for the record evidence indicates that Osiris is little more than the corporate alter ego of Garcia, its president and sole director. Acuna, as Garcia's wife, also faces at most a modest burden in having to defend herself in this litigation. The balance of hardships

10

clearly favors keeping this case in Ohio, and this Court thus finds that "the ends of justice require" retaining jurisdiction over Osiris and Acuna.

**IV. Conclusion**

For the foregoing reasons, the motion to dismiss (Doc. 14) is denied.

IT IS SO ORDERED.

                                                      s/ *David A. Katz*
                                                      DAVID A. KATZ
                                                      U. S. DISTRICT JUDGE